UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EUGENE GUERRE, JR. and GENESIS WEIGHT LOSS CENTER, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 23-cv-10967-ADB |
| CYNOSURE, LLC, | * * | |
| Defendant. | * * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiffs Eugene Guerre, Jr. ("Guerre") and Genesis Weight Loss Center, LLC ("Genesis" and, collectively, "Plaintiffs") allege that Defendant Cynosure, LLC ("Defendant" or "Cynosure") made unfair and fraudulent representations in connection with the sale of a medical device.  See [ECF No. 4-1 ¶¶ 10–43 ("Compl." or "Complaint")].  Pending before the Court is Defendant's motion to dismiss.  [ECF No. 23].  For the reasons set forth below, the motion is DENIED.

## I.   BACKGROUND

### A.   Background Facts

The following relevant facts are taken primarily from the Complaint, which the Court assumes to be true when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Guerre founded Genesis in 2007 to offer services for "weight management, medical cosmetics, and gynecology."  [Compl. ¶ 9].  Cynosure apparently sells medical devices, including the Icon Workstation (the "Icon").  [Id. ¶ 10].

In December 2019, Bobby Fiaco, a sales representative for Cynosure, contacted Plaintiffs and "informed [them] about the Icon Workstation, a laser-assisted device that would enable [them] to treat patients with a wide range of skin types to reduce the appearance of wrinkles, stretch marks, scarring, and other skin ailments as well as remove unwanted hair."  [Compl. ¶ 10].  Two weeks later, Fiaco visited Genesis with his supervisor, Kris Huston.  [Id. ¶ 11].

At that visit and later visits, Fiaco, Huston, and other Cynosure representatives made several statements regarding the Icon that are at issue here.  For example, they told Plaintiffs that Cynosure would "help with marketing the Icon" to "attract additional clients," [Compl. ¶¶ 12, 19], "assist with . . . advertising [] Plaintiffs' services," [id. ¶ 13], "and promot[e] the overall visibility of Genesis['s] . . . webpage and internet presence," [id.].  They also told Plaintiffs "that the [Icon] was simple to operate" and that "Genesis's staff would receive ample training on the [Icon]."  [Id. ¶ 19].  Finally, they represented that, "in their experience, patients were more than willing to pay" for the cost of Icon procedures.  [Id. ¶ 20].

Around April 13, 2023, "after several meetings . . . , Genesis agreed to lease the Icon" so it could "expand the range of services [it] provided to clients."  [Compl. ¶ 14].[1]  In order to get the funds to lease the Icon, Genesis entered a financing agreement (the "Loan Agreement") that required it to "pay six monthly installments of $99.00 followed by 60 monthly payments at $3,981.79," for a total financed amount of $239,501.40.  [Id. ¶¶ 15–18].

---

[1] As part of its motion to dismiss, Defendant attaches a "Customer Purchase Agreement" (the "Purchase Agreement") purportedly between Guerre and Cynosure, [ECF No. 24-1], and generally argues, among other things, that the Purchase Agreement contains a warranty disclaimer that prevents Plaintiffs from bringing the claims here, [ECF No. 24 at 5–7], as well as a choice of law provision that would result in the application of Massachusetts law, [id. at 8].  As discussed below, the Court declines to consider the Purchase Agreement for purposes of this motion to dismiss.

After the Icon was delivered, Plaintiffs allege that Cynosure failed to live up to the representations it had made.  First, Cynosure "failed to provide any assistance with marketing," and Plaintiffs tried to "schedule appointments and calls with CynoSure's marketing representatives to no avail."  [Compl. ¶ 21].  For one scheduled meeting, Cynosure's marketing representatives failed to arrive.  [Id. ¶ 22].

Second, Cynosure provided "a single training to all of Genesis's staff."  [Compl. ¶ 23]. During the training, the Cynosure trainer "had to make three phone calls to Cynosure because she was confused about operating the Icon," which was "extremely complicated," and Plaintiffs themselves "had difficulty safely operating and using [it]."  [Id. ¶¶ 24–25].  According to Plaintiffs, "a single training was insufficient to guarantee the safe and effective use of the [Icon]."  [Id. ¶ 26].  They then learned that Cynosure offered an additional training, but "at the cost of $1,000 per session," which had not been "disclosed to [] Plaintiffs."  [Id. ¶ 27]. Ultimately, after "repeated phone calls, CynoSure agreed to provide a second training for no cost, which, like the first, failed to provide the staff at Genesis . . . with the ability to properly and safely use the [Icon]."  [Id. ¶ 31].  The second training happened "after the expiration of the 6-month $99 payment period."  [Id. ¶ 32].

Third, the "Icon could not be used on people of all skin colors," which had "not [been] disclosed by the representatives of Cynosure during negotiations."  [Compl. ¶ 30].

Finally, there were additional costs that were not disclosed by Cynosure, including "insurance for $500 per month," [Compl. ¶ 28], and "significant" costs for the "disposable parts and equipment necessary to operate the Icon," [id. ¶ 29].

The Icon ultimately "sat dormant and useless" at a cost of $5,000 per month.  [Compl. ¶ 33].  In addition, Plaintiffs spent "approximately $3,000 per month . . . on banners, billboards, pamphlets, business cards, and other promotional advertising materials and events."  [Id. ¶ 34].

Genesis later defaulted on the Loan Agreement.  [Compl. ¶ 36].  After the default, the Icon was repossessed and sold for $20,000, and the repossessing entity alleged that Genesis owed it $195,299.60.  See [id. ¶¶ 37–40].

### B.    Procedural History

The procedural history of this case is winding, see [ECF No. 4 ¶¶ 1–7], but as relevant here, it was transferred to this Court from the Middle District of Florida on May 1, 2023, [ECF No. 17].  On May 23, 2023, Defendant moved to dismiss.  [ECF No. 23].  Plaintiffs opposed on June 29, 2023.  [ECF No. 27].  Defendant replied on July 13, 2024, [ECF No. 34], and Plaintiffs filed a sur-reply on August 1, 2023, [ECF No. 37].

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

In addition, with respect to claims of fraud, Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b).  In the First Circuit, plaintiffs are required to set out "the who, what, where, and when of the allegedly false or fraudulent representation," Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004), and "identify[] the basis for inferring scienter," Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 419 F. Supp. 3d 176, 189 (D. Mass. 2019) (quoting N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009)).  "[T]he specificity requirement extends only to the particulars of the allegedly misleading statement itself.  The other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 15 (1st Cir. 2004) (citations omitted); see also Runyon v. Wellington Mgmt. Co., No. 13-cv-11236, 2015 WL 1276825, at *5 (D. Mass. Mar. 20, 2015) (noting that "reliance" is not subject to Rule 9(b)'s heightened pleading requirement).

## III.     DISCUSSION

### A.     The Purchase Agreement

As footnoted above, Defendant Cynosure attaches to its motion to dismiss a Purchase Agreement between Guerre and Cynosure.  [ECF No. 24-1].  The Purchase Agreement includes a first page naming "Dr. Guerre" as the "Customer," and is apparently signed by Guerre and a Cynosure representative.  [Id. at 1].  The second page does not have a page number, does not reference Guerre or Genesis, is not initialed or signed by any party and is not otherwise clearly tied to the first page.  [Id. at 2].  Further, this Agreement is not attached to the Complaint, and its terms are not described in the Complaint.  See [Compl. ¶ 14].

As relevant to the arguments here, the Purchase Agreement contains a warranty section, which provides the following:

> THE OBLIGATIONS OF CYNOSURE UNDER THIS WARRANTY ARE
> LIMITED, IN ITS EXCLUSIVE OPTION, TO REPAIR OR REPLACE PARTS

AND MATERIALS WHICH PROVE TO BE DEFECTIVE. . . . THE FOREGOING WARRANTIES ARE THE SOLE AND EXCLUSIVE WARRANTY OBLIGATIONS OF CYNOSURE, AND THE REMEDY PROVIDED ABOVE IS IN LIEU OF ANY AND ALL OTHER REMEDIES. THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING WITHOUT LIMITATION, WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CYNOSURE SHALL NOT BE LIABLE FOR LOST PROFITS OR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES DUE TO ANY CAUSE WHATSOEVER EVEN IF ADVISED AS TO THE POSSIBILITY OF SUCH DAMAGES.  THE CUSTOMER AGREES THAT CYNOSURE'S LIABILITY IS SO LIMITED.

[ECF No. 24-1 at 2].  It also contains a choice of law provision which states that "[t]his Agreement shall be governed by and construed under the substantive laws of the Commonwealth of Massachusetts."  [Id.].

"Ordinarily, . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Courts, however, "have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id.

Here, Plaintiffs "do[] not concede the veracity of the so-called Purchase Agreement" because it does not reference Genesis as a party to the agreement, "contains no page numbers, [and] has a fax stamp on the upper right hand corner of the first page but no similar stamp on . . . the second page."  [ECF No. 27 at 4 n.1].  They further state that they do not "conced[e] that it is the operative document or that Genesis has a record of ever being provided with what purports to be the second page of the document."  [Id.].

In reply, Defendant argues that

the Purchase Agreement is a pertinent document. . . .  The Complaint alleges Dr. Guerre founded Genesis in 2007. [Compl. ¶ 9].  Based upon this allegation, and the fact that Dr. Guerre is a party to this action, it is reasonable to conclude that he was an agent of Genesis acting on its behalf when he signed the Purchase Agreement. The Complaint further alleges that Genesis agreed to lease the Icon Workstation referring to a "Lease". [Compl. ¶ 14].  The Complaint further alleges the Plaintiffs entered into a financing agreement for the purchase of the Equipment. [Compl. ¶ 15].  The Plaintiffs failed to attach the "Lease" to the Complaint.  Exhibit A, attached to Cynosure's Motion to Dismiss is the undisputed Purchase Agreement executed between the parties for the purchase of the Equipment.  As the Purchase Agreement contains the written terms of the agreement between the Plaintiffs and Cynosure, it is highly pertinent to the pleadings and properly before this Court.

Furthermore, the Plaintiffs' argument that there are outstanding issues of fact as to whether the Purchase Agreement is valid or was executed by the Plaintiffs is inconsistent with prior decisions. Cynosure's Motion to Transfer this action to Massachusetts relied solely on the forum selection clause contained on the second page of the Purchase Agreement, attached as Exhibit A. The Plaintiffs did not contest the validity or the existence of the Purchase Agreement but argued that the clause was not mandatory and their selection of Florida as the forum for the case should not be disturbed.  . . . Specifically, the Plaintiffs argued: "In this case, the FDUPTA claim does not arise out of the contract but is instead related to the issues surrounding the promises leading up to the contract and the post-contract marketing and training on the Equipment." . . . . The Florida court in granting Cynosure's Motion to Transfer rejected this argument and relied on the language of the Purchase Agreement.

[ECF No. 34 at 3–4 (citing ECF No. 9 at 12, ¶ 31)]; see also [ECF No. 17].

First, despite Defendant's argument that the Purchase Agreement is "the undisputed Purchase Agreement executed between the parties for the purchase of the Equipment," [ECF No. 34 at 3], Plaintiffs specifically contest the "veracity of the so-called Purchase Agreement," [ECF No. 27 at 4 n.1].  The authenticity of the Purchase Agreement is therefore in dispute.

Second, the Complaint only refers to a "lease," not a "Purchase Agreement," and does not make any reference to the Purchase Agreement's provisions.  See [Compl. ¶ 14].  This description is insufficient for the Court to determine that the "lease" is in fact the Purchase Agreement, and even if it was the Purchase Agreement, who received it and was bound by it.

The Court thus declines to find that the reference to the "lease" is a sufficient reference to the Purchase Agreement for it to be considered for this motion to dismiss.[2]

Third, although the Purchase Agreement may very well be the "lease" described in the Complaint, see [Compl. ¶ 14], which would arguably make it central to Plaintiffs claims,[3] the Court is not prepared to make that determination on this limited record.

---

[2] Defendant cites In re Computervision Corp. Sec. Litig, 869 F. Supp. 56 (D. Mass. 1994), for the proposition that the Court can consider the Purchase Agreement because it is referenced in the framing of the Complaint.  [ECF No. 34 at 3].  There, a different session of this court considered a stock prospectus that was not attached to the complaint, but was attached to defendant's motion to dismiss.  Computervision Corp., 869 F. Supp. at 59–60.  In ruling that it would consider the prospectus, the court relied on Fudge v. Penthouse Int'l, Ltd., where the First Circuit held that "when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."  840 F.2d 1012, 1015 (1st Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327 at 489 (1969)).  The First Circuit in Fudge went on to say, however, that "[c]learly, not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss," but held that the prospectus was nonetheless admissible in part because it "was not merely referred to in the plaintiffs' complaint but was absolutely central to it," and because "plaintiffs did not . . . challenge the authenticity of the copy of the [document]."  Id.  Subsequent courts have echoed these findings.  See Beddal v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." (emphasis added) (citing Fudge, 840 F.2d at 1012)); see also Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (same).  Here, as explained above, there is only a limited reference, if any, to the Purchase Agreement in the Complaint, and Plaintiffs dispute the authenticity of the Purchase Agreement.  See supra.

[3] Although Plaintiff argues that "an oral contract covers the purchase of the equipment and services from Cynosure[, and] Genesis did not attach the alleged Purchase Agreement to its Complaint because . . . Genesis is unaware of the existence of any written contract binding the parties," [ECF No. 37 at 3], the Court notes that on summary judgment, to the extent that the Purchase Agreement is a contract for the Icon between Plaintiffs and Defendant, it would undoubtedly impact the implications and applicability of any oral promises made surrounding the Purchase Agreement.  See Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995) ("Evidence of prior or contemporaneous oral agreements cannot be admitted to vary or modify the terms of an unambiguous written contract." (emphasis omitted) (quoting Fairfield 274-278 Clarendon Tr. v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992)); see also Surety Bank v. Dunbar

Finally, the Court must consider whether Plaintiffs waived the argument that the Purchase Agreement is not authentic and was not received by them in its entirety by virtue of their arguments contesting the motion to transfer to this Court.  See [ECF No. 9 at 1–2].  In a case involving very similar circumstances, on summary judgment, a different session of this court in Plastic Surgery Associates, S.C. v. Cynosure, Inc. held that "[a]lthough Plaintiffs' reliance upon the choice of law provision" in its affirmative pleadings "d[id] not automatically preclude Plaintiffs' argument that [the parties contracting with Cynosure] did not receive the second page [of the contract], . . . this argument contradict[ed] the pleadings and record . . . regarding such receipt."  407 F. Supp. 3d 59, 81, 81 n.10 (D. Mass. 2019); see also id. at 81 ("Plaintiffs have not conceded the validity of their contracts with Cynosure solely because they argued the existence of a valid choice of law provision in support of their opposition to summary judgment on the Chapter 93A claim."); [ECF No. 37 at 3].  Here, there is no record for the Court to rely on to determine whether it is reasonable to find that Plaintiffs received the full Purchase Agreement, and Plaintiffs also did not make any affirmative pleadings based on the choice of law provision.[4]

---

Armored, Inc., No. 14-cv-81368, 2015 WL 6470505, at *7 (S.D. Fla. Oct. 27, 2015) ("[B]ecause a valid written contract exists between the parties, the [plaintiff] cannot seek enforcement of additional, related verbal promises allegedly made before the contract was executed under application of parole evidence rule precepts.").

[4] The Court notes that, with a more complete record on summary judgement, it may very well reach the same finding as the court in Plastic Surgery.  Specifically, that even if Plaintiffs "did not receive the second page," they are "sophisticated business entities that received and signed at least the first page of a contract expressly incorporating the terms of the second page and who, even if they were not given the second page, should reasonably have been expected to ask to see the second page before binding themselves to its terms for a purchase that exceeded $150,000," and thus concluding that "the contracts—including the second page—are valid and that Cynosure successfully disclaimed the implied warranty of merchantability."  407 F. Supp. 3d at 82.

Accordingly, the Court will not consider the Purchase Agreement for purposes of this motion to dismiss.[5]

### B.      The Claims

Plaintiffs allege that Defendant (1) violated the Florida Deceptive and Unfair Trade Practices Act, [Compl. ¶¶ 44–58]; (2) breached an oral contract, [id. ¶¶ 59–66], (3) committed fraud in the inducement, [id. ¶¶ 67–73]; (4) committed fraud, [id. ¶¶ 74–81]; (5) was unjustly enriched, [id. ¶¶ 82–88]; and (6) made negligent misrepresentations, [id. ¶¶ 89–97].  Defendant's motion to dismiss, in turn, is based largely upon the terms of the Purchase Agreement that the Court cannot consider.  See supra.  As examples, Defendant argues that (1) Massachusetts law applies "[b]ased upon the undisputed choice of law provision of the Purchase Agreement," [ECF No. 24 at 9 n.2], which requires that the counts be dismissed, see [id. at 9–13, 14–17]; see also [ECF No. 34 at 6]; (2) all the claims are barred by the Purchase Agreement's disclaimer, [ECF No. 24 at 13–14]; (3) the fraud claims should be dismissed based at least in part on the terms of the Purchase Agreement, [id. at 16]; and (4) Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs have an alternative remedy at law, namely their breach of contract claim, [id. at 16–17].  In sum, all of Defendant's arguments rely on the Court's ability to consider and interpret the Purchase Agreement, and because the Court cannot do so, it denies Defendant's motion.

## IV.   CONCLUSION

Accordingly, Defendant's motion to dismiss, [ECF No. 23], is DENIED.

---

[5] Plaintiffs argue that the Court either should "refuse to consider" the Purchase Agreement, or "consider the motion as one for summary judgment and allow Genesis the rights pursuant to responding to a summary judgment motion." [ECF No. 27 at 20].  Because there are several factual disputes surrounding the Purchase Agreement, the Court declines to convert the pending motion into a motion for summary judgment.

**SO ORDERED.**

January 23, 2024                                        /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE